**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

BRYANT NEIL BROWN,

      Plaintiff,

v.

HON. WALTER McNEIL, et al.,

      Defendants.

CASE NO. 4:19-cv-345-MW/MAF

**PLAINTIFF'S MEMORANDUM ON**
**ISSUES FOR SUMMARY JUDGMENT**

Plaintiff BRYANT BROWN, through counsel, pursuant to the Court's Order

(ECF 155) files this Supplemental Briefing on Summary Judgment, and would

address the following issues:

1. The application of the framework in *Ancata v. Prison Health Services*.

2. Facts and inferences to be considered and which, if any, are in dispute.

3. Why any of the above facts and inferences may be in dispute.

**MEMORANDUM OF LAW**

Summary judgment is appropriate only when there is no genuine issue of

material fact. A fact dispute is "genuine" if a reasonable jury could return a verdict

for the nonmoving party and a fact is "material" if it might affect the outcome of

the suit. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A court views

facts and inferences in the light most favorable to the nonmoving party. *Matsushita*

*Elec. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

1

**A. Are the Medical Defendants Deliberately Indifferent?**

The issue to be resolved as to Corizon Health, Inc., and its employees, i.e. the "medical defendants," is whether the evidence, and the inferences that can be reasonably drawn from it, taken in the light most favorable to the Plaintiff, could cause a jury to find deliberate indifference to serious medical needs. Although Corizon and its employees are contractors, not public employees, state action is present. Medical care of prisoners is traditionally a public duty and where it is performed by a private entity, state action is still present. *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449 (1974).

A negligent failure to diagnose, by itself, will not constitute deliberate indifference. But an unnecessary and wanton infliction of pain" whether by medical providers or corrections officials "denying or delaying access to medical care" can be deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291 (1976). The failure to treat must involve "acts or omissions sufficiently harmful to evidence deliberate indifference." *Id*. at 106.

Here, Defendants knew from day one that Plaintiff had multiple sclerosis and from day three that it was the relapsing-remitting type and had received significant and prolonged treatment from a local neurologist who was responsive enough to respond to their request for records. Defendants had received a request from Plaintiff's family to accept his current medication and refused it. They had

records from Tallahassee Memorial Hospital that said Plaintiff took a multiple sclerosis medication, Gilenya, and that it was a "continuing medication." Although Dr. Ayala's office did not send over the complete medical file, there was enough information to warrant an effort by the Jail's medical providers to pick up the phone and speak to Dr. Ayala to inquire about Plaintiff's need for MS medication.

Based on the fact that Jail medical providers knew Plaintiff's MS was subject to relapse and that had been taking medication just prior to his booking, they had no basis to assume that he did not still need the medication. At the very least, he should have received a referral to his neurologist, or any neurologist.

There are sufficient facts and inferences to allow a jury to draw the inference that Plaintiff had a need for medical care that was intentionally denied. This is not mere negligence or comparable to the "innocent misadventure" spoken of by Justice Frankfurter in *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 67 S.Ct. 374, 91 L.Ed. 422 (1947), where prison officials sought a second chance to execute an inmate where the first attempt failed, cited in *Estelle*, 429 U.S. 97 at 105, and has consistently been held to constitute deliberate indifference. *Ancata cited Ramos v. Lam*, 639 F.2d 559, 575 (10th Cir.1980), cert. denied, 450 U.S. 1041, 101 S.Ct. 1759 (1981) where the court said:

> Deliberate indifference to serious medical needs is shown when prison officials have prevented an inmate from receiving recommended treatment or when an inmate is denied access to medical personnel capable of evaluating the need for treatment.

3

*Ancata*, 769 F.2d at 704.

In this case, a jury could find that the medical Defendants knew medical care or a referral was needed but failed to provide it. Defendants were made abundantly aware that Plaintiff at the very least needed a neurological evaluation from "medical personnel capable of evaluating the need for treatment" as referenced in *Ancata*,[1] 769 F.2d at 704, and refused to see that he was properly evaluated.

A jury could also reasonably infer that the failure to provide medication that cost nearly $90,000 a year was a consideration in the failure to provide the medication to Plaintiff for nearly a year and a half. Although an individual defendant may plead that she did the best she could "within the limits of [her] authority," *Williams v. Bennett*, 689 F.2d 1370, 1388 (11th Cir. 1982), that is not the case here where the chief jail physician Maria Garcia has stated that she never took costs into consideration when providing treatment. (ECF 109 at 14, ¶ 48). Public entities are "precluded from pleading lack of funds as a defense to operating prisons in violation of the constitution." *Id*. at 1388; *Miller v. Carson*, 401 F. Supp. 835, 842 (M.D. Fla. 1975), *aff'd in part, modified in part and remanded*, 563 F.2d 741 (5th Cir. 1977). *See Gates v. Collier*, 501 F.2d 1291 (5th Cir.1974); *see also Miller v. Carson*, 401 F.Supp. 835, 889–91 (M.D.Fla.1975), aff'd 563 F.2d 741

---

[1] This is not a case where a physician exercised independent medical judgment to rule out the need for MS medication. *See Simmons v. Florida Dep't of Corr*., 5:14-CV-438-OC-39PRL, 2016 WL 7116212, at \*23 (M.D. Fla. Apr. 20, 2016) (Dr. Belizaire's failure to provide timely physical therapy for patient was not based on his "medical judgment" so as to invoke negligence.)

(5th Cir.1977). *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018 (1978) set down a standard upon which individuals could recover from municipalities in section 1983 actions.

Of course, here, punishment, "cruel and unusual" or otherwise, doesn't come into the question. Pretrial detainees "are not to be subjected to any hardship except those absolutely requisite for the purpose of confinement only." Id. at 747; *Rhem v. Malcolm*, 507 F.2d at 336-37; *Jones v. Wittenberg*, M.D.Ohio 1971, 323 F.Supp. 93, 100, *aff'd,* 6 Cir. 1972, 456 F.2d 854. As Blackstone noted:

> Upon the whole, if the offense be not bailable, or the party cannot find bail, he is to be committed to the county gaol . . . there to abide till delivered by due course of law. . . . But this imprisonment, as has been said, is only for safe custody, not for punishment: Therefore, in this dubious interval between the commitment and the trial, a prisoner ought to be used with the utmost humanity, and neither be loaded with needless fetters or subjected to other hardships than such as are absolutely requisite for the purpose of confinement only.

4 Blackstone Commentaries 300. (Ehrlich's Blackstone 901 (1959)). *Miller, Id*. If necessary medical treatment has been delayed for non-medical reasons, a case of deliberate indifference has been made out. *Ancata* at 704; *See Archer v. Dutcher*, 733 F.2d 14, 17 (2d Cir.1984).

The evidence permits inferences far beyond that of simple mistake or negligence. It demonstrates that the medical care provided was so cursory as to amount to no treatment at all. *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989). Such actions, in the case of serious medical problems, may violate the Fourteenth

Amendment. *See Tolbert v. Eyman*, 434 F.2d 625, 626 (9th Cir.1970). As the Third

Circuit has noted under similar facts:

> Although the plaintiff has been provided with aspirin, this may not constitute adequate medical care. If, "deliberate indifference caused an easier and less efficacious treatment" to be provided, the defendants have violated the plaintiff's Eighth Amendment rights by failing to provide adequate medical care.

*Ancata* at 704, *citing West v. Keve*, 571 F.2d 158, 162 (3d Cir.1978). The evidence

in this case justifies a conclusion that the medical defendants were deliberately

indifferent to Plaintiff's serious medical needs.

**B. Is the Defendant Sheriff Also Liable for the Failure to Treat?**

Plaintiff Bryant Brown was a pretrial detainee at the Leon County Jail whose

claim for treatment is based in the Fourteenth Amendment to the U.S. Constitution,

which offers protections "at least as great" as the Eighth Amendment protections

available to a convicted prisoner. *City of Revere v. Massachusetts General*

*Hospital*, 463 U.S. 239, 103 S.Ct. 2979 (1983). Public entities have a constitutional

obligation to provide adequate medical care to those whom it has incarcerated."

*Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989). Plaintiff went 17 months

without medication for Multiple Sclerosis, resulting in neurological deficits.

The Defendant Sheriff is sued in his official capacity as the constitutional

officer ultimately responsible for operation of the Leon County Jail. Defendant

McNeil was the sheriff at the time of the failure to treat Plaintiff. The issue to be

resolved as to Sheriff McNeil, is whether he has liability for the actions of his

contract health provider, Corizon, including actions of which he may be unaware.

A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government is responsible for under §1983. *Monell,* 436 U.S. at 694. The Eleventh Circuit, in analyzing the *Monell* standard for municipal liability, concluded:

> The former Fifth Circuit has interpreted this standard of liability to mean that "in those areas where the official 'is the final authority or ultimate repository of [city] power, his official conduct and decisions must necessarily be considered those of one whose edicts and acts may fairly be said to represent official policy.

*Schneider v. City of Atlanta*, 628 F.2d 915, 920 (5th Cir.1980), *quoting Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir.1980)). *Hearn v. City of Gainesville*, 688 F.2d 1328, 1334 (11th Cir.1982).

Municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 470 (1986). Authority to make municipal policy may be delegated by an official who possesses such authority. *Id*. at 483; *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988). Citing the delegation theory of governmental liability outlined in *Pembaur* and *Praprotnik*, the Eleventh Circuit in *Mandel v. Doe* held that final policymaking authority with respect to medical decisions at a road prison

had been delegated to a single unsupervised physician's assistant. 888 F.2d at 793.

The Sheriff of Leon County, currently Walter McNeil, made an agreement with Defendant Corizon to provide necessary medical care for Inmates at the Jail. The Sheriff and Corizon Health, Inc. operated under a Health Services Agreement (Agreement). (ECF No. 106-2 at 68-87; ECF 107 at 6) Under the Agreement, Corizon agreed to serve as an independent contractor with "sole responsibility" for "all medical care decisions" at the Jail (Id. at 84, ¶ 11.1). Since Corizon is designated as the sole health care decision-maker by the Sheriff, a constitutional officer and municipal entity, the Sheriff is liable for the decisions of Corizon.

Since Sheriff McNeil designated Corizon as the final policymaker for health care decisions, he is liable. *See Trezevant v. City of Tampa*, 741 F.2d 336 (11th Cir.1984). Such liability would not be based upon notions of respondeat superior. The liability would be a result of the Sheriff's own policy. *Monell, supra.*

## C. Facts and Inferences that Could Warrant a Jury Finding of Liability

Plaintiff contends that the following facts or inferences that could be reasonably drawn from those facts would justify a finding of liability by a jury.

| No. | yyyy mmdd | Evidence | Evidence Cite | Dispute? |
|---|---|---|---|---|
| 1. | 2014 0716 | Plaintiff received MRI in 2014 with no significant change from his 2013 MRI | ECF 114-3 at 1 | N |
| 2. | 2014 0926 | Florida Department of Corrections Secretary Michael Crews writes Corizon CEO to complain that its "level of care continues to fall below the contractually required standard. | ECF 114-27 | N |
| 3. | 2014 1003 | Contract between Sheriff and Corizon | ECF 136-8 | N |

| 4. | 2015 0224 | Employment Evaluation: "Debbie has exceeded all financial objectives at this cite. She controlled inventory, medical supplies, and administrative costs below forecasted levels… She has weekly administrative meetings with her management staff not only to discuss clinical issues but financial ones as well. | ECF 114-21 at 1 | N |
|---|---|---|---|---|
| 5. | 2015 0300 | Penfield Christian Homes record that Plaintiff was taking medication during March 2015 | ECF 114-2 at 1 | N |
| 6. | 2015 0723 | Plaintiff admitted to Tallahassee Memorial Hospital; records show "Gilenya .5 mg medication to continue." | ECF 114-06 at 1 | N |
| 7. | 2015 0727 | Plaintiff worked and took his medication right up to the time he went to jail. Dr. Ayala continued to provide medication. He separated from his wife in the fall of 2014 and she could not testify as to his medication compliance. | ECF 114-1 at ¶¶ 2-4 | Y |
| 8. | 2015 0727 | Plaintiff booked into Leon County Jail. Jail intake notes TMH Discharge Summary showing "Gilenya, .5 mg…daily…medication to continue" | ECF 114-06 at 6 | N |
| 9. | 2015 0727 | Nurse Stephens does Segregation Screening, notes Plaintiff is not getting medications. | ECF 114-07 at 1 | N |
| 10. | 2015 0727 | Progress note. Notes medical Hx MS. Send to Nurse Stephens for eval… Rx list from TMH. | ECF 114-10 at 1 | N |
| 11. | 2015 0728 | Progress note. Dr. Garcia: Pt. Hx of Multiple Sclerosis, Dr. Ayala neurologist. | ECF 114-10 at 1 | N |
| 12. | 2015 0728 | Special Needs Treatment Plan signed off on by Dr. Garcia. No plan for medication. However form appears to say "med/eval" | ECF 114-08 at 2 | N |
| 13. | 2015 0729 | Nursing Encounter, "dizzy… can't see … told Dr. yesterday. Dysphoretic (sic) nausea, vomit, dizzy, vertigo… skin clammy, … states Hx MS. | ECF 114-9 at 1 | N |
| 14. | 2015 0729 | Progress Note: Sees Dr. Garcia. Vertigo… "everything is spinning" | ECF 114-10 at 2 | N |
| 15. | 2015 0805 | Progress Note: Note on MS Agents: Copaxone, Interferon Beta 1a, Peg Inteferon Beta 1a, Available: Decadron Hmg IM, Prednisone | ECF 114-10 at 2 | N |
| 16. | 2015 0818 | Health Services Request for MS medication | ECF 114-16 at 6 | N |
| 17. | 2015 0827 | Grievance: "I am writing again to inquire about my medication for my Multiple Sclerosis (MS) | ECF 114-14 at 1 | N |

| | | which you all said you were going to get for me." Sellers: "Review records from Dr. Ayala with Dr. Garcia." | | |
|---|---|---|---|---|
| 18. | 2016 0301 | Psychiatrist Progress Note: "Outside doctor looking into eval/rx for MS. He has an established dx, has been on treatment but none here at this time. He has had some episodes of dizziness & I noted he tends to lose track of conversation at times." James Whitman, MD. | ECF 114-15 at 1 | N |
| 19. | 2016 0301 | Psychiatrist James Whitman notes Plaintiff's "neurological symptoms." | ECF 114-15 at 1, 3 | N |
| 20. | 2016 0504 | Deborah Sellers Job Description: "manages the budget and financial performance of the site." (But testified under oath she did not know the cost of Plaintiff's MS medication.) | ECF 114-20 | N |
| 21. | 2016 0508 | Health Services Request Form. Plaintiff noting numbness and speech problems. | ECF 114-16 at 5 | N |
| 22. | 2016 0508 | HSA Sellers tells Plaintiff to follow-up with sick call | ECF 114-14 at 2 | N |
| 23. | 2016 0522 | Grievance: "I asked to be put on medication for my Multiple Sclerosis. I am still having symptoms… Sellers: Plan of care was explained documented on 5/26/2016. Please address further through sick call. | ECF 114-14 at 2 | N |
| 24. | 2016 0526 | HSA Sellers: "Prescription is not current" "Plan of care was explained/documented on 5/26/16." | ECF 114-14 at 2 (RC. 27) | N |
| 25. | 2016 0600 | ARNP MacDonald prescribes Prednisone, a steroid. | ECF 114-17 MAR (RC. 31) | N |
| 26. | 2016 0600 | HSA Sellers again notes lack of prescription | ECF 114-14 at 3 | N |
| 27. | 2016 0600 | HSA Sellers tells Plaintiff he will see a specialist | ECF 114-14 at 4 | N |
| 28. | 2016 0606 | Defendant MacDonald told Plaintiff would not receive medication | ECF 114-14 at 3 (RC. 38) | N |
| 29. | 2016 0607 | Grievance: On 06 June 2016 I was seen by PA Celeste McDonald who stated I will not receive any medication for an irreversible nerve disease known as relapsing-remitting Multiple Sclerosis. Sellers: I am aware of the situation. Discussed case with site Medical Director… You will continue to be monitored | ECF 114-14 at 3 | N |
| 30. | 2016 0607 | Plaintiff grieved requesting medication | ECF 114-14 at 3 | N |

| 31. | 2016 0613 | Plaintiff saw psychiatrist after 14 days on Prednisone, still suffering from symptoms. "I/M finished 1 week course of prednisone. Wants other MS meds. c/o numb left hand and face." | ECF 114-18, at 1 (RC. 35 & 40) | N |
|---|---|---|---|---|
| 32. | 2016 0628 | Second Amended Contract between Sheriff and Corizon | ECF 136-6 | N |
| 33. | 2016 0816 | Health Services Request Form. Plaintiff documents anxiety and panic attacks | ECF 114-16 at 1 | N |
| 34. | 2016 0911 | Health Services Request Form. Plaintiff complained of numbness, balance and vision difficulty, headaches, and shaking. | ECF 114-16 at 2,7 | N |
| 35. | 2016 1016 | Health Services Request Form. Plaintiff complains that he missed his MRI appt. due to court. | ECF 114-16 at 3 | N |
| 36. | 2016 1026 | Brown's MRI shows evidence of new lesions, indicating disease progression. | ECF 114-5 at 45:4-14 | N |
| 37. | 2016 1026 | Admitted Plaintiff received an MRI with new areas of demyelination. | ECF 108-41 | N |
| 38. | 2016 1122 | Health Services Request Form. Plaintiff requests a bottom bunk pass because he has difficulty getting into the top bunk due to his illness. | ECF 114-16 at 4 | N |
| 39. | 2016 1204 | Grievance: I am writing once again in regards to this issue of getting put on medication for my Multiple Sclerosis. It has now been a month since my MRI which shows that my disease has progressed. Sellers: Your records were reviewed by specialist and then you were given an appt. | ECF 114-14 at 4 | N |
| 40. | 2016 1204 | Plaintiff grieves that the medical department is not taking his disease seriously as it has continued to progress and it is taking a very long time for him to see a neurologist | ECF 114-14 at 4 | N |
| 41. | 2016 1213 | Dr. Ayala verifies Plaintiff had new lesions on his October MRI and tremors, numbness, trembling, unsteady gait, etc. | ECF 114-22. at 1-3 | N |
| 42. | 2016 1219 | E-mails by Public Defender Social Worker asking about the progress of getting Plaintiff's MS medication. Sellers: "approval is required." | ECF 135-5 at 1 | N |
| 43. | 2017 0928 | Pharmacy Utilization Report. The report, signed by Defendants Sellers and Garcia showing the monthly cost of Plaintiff's MS medication and noting that it totals more than half the monthly | ECF 136-2 at 1-2 | N |

| | | non-formulary costs to the Jail. | | |
|---|---|---|---|---|
| 44. | 2019 0104 | Dr. Ayala states in a letter that Plaintiff has not received Copaxone (or any MS medication) for a year and a half while in jail. He attests that not taking any medication for MS for any significant amount of time will make MS worse. | ECF 114-24 | N |
| 45. | 2019 0319 | Dr. Carl Maier, former Corizon Hospital Medical Director at the Reception and Medical Center testifies in another case that Corizon implemented "severe restrictions on all aspects of medical care provision." | ECF 114-28 at 5:11-22 | N |
| 46. | 2019 0912 | Adamar Gonzalez Deposition in another case. Gonzalez testified that cost containment meant that you provide the care "with the money we manage at the site . . . within budget, yes." | ECF 114-30 at 2:16-3:6 | n |
| 47. | 2019 1002 | Mark Stern, MD, MPH, Rule 706 Expert: A key realization that led me to this approach is that, with the few exceptions, these deficiencies do not exist because of a knowledge deficit on the part of Corizon that requires the expertise of an external expert to fix. Corizon is a mature company which has been in the correctional health care business (as Corizon, or as its progenitors Prison Health Services and Correctional Medical Services) for years and has faced challenges greater than the ones it faces in Arizona. Corizon has the experience and expertise it needs. In my opinion, failure to fix the problems identified by the Court and identified in this report stems from a lack of will, rather than a lack of know-how on the part of the health care vendor. | ECF 114-35 at 4 | N |
| 48. | 2020 0608 | Request for Admissions: Defendants MacDonald and Garcia admitted "lack of treatment can cause MS symptoms to worsen and permanent physical damage" | ECF 114-25 at 4, ECF 114-19 at 4 | N |
| 49. | 2020 0715 | Corizon admitted vision problems can be symptoms of MS. | ECF 114-12 at 4 | N |
| 50. | 2020 0715 | Corizon admitted dizziness problems can be symptoms of MS. | ECF 114-12 at 4-5 | N |
| 51. | 2021 0115 | Admitted that Garcia testified Plaintiff had additional flare-ups after Prednisone. | ECF 108-23 at 23:14-19 | N |

| 52. | 2021 0115 | Deposition of Deborah Sellers in which she testifies under oath that she didn't know the cost of Plaintiff's medication. | ECF 136-4 at 48:18-23, 49: 2-3. | N |
|---|---|---|---|---|
| 53. | 2021 0115 | Notice of Rule 30(b)(6) Deposition in which HSA Sellers is asked to bring cost information to the deposition but fails to do so. | ECF 136-9 | N |
| 54. | 2021 0201 | Ayala Deposition: Plaintiff's MRI suggests the disease was progressing | ECF 114-5 at 55:5-6 | N |
| 55. | 2021 0201 | Per Dr. Ayala, steroids for an MS flareup should be followed by an immediate neurologist visit. | ECF 114-5 at 32:19-20 | N |
| 56. | 2021 0201 | Per Dr. Ayala, patients should immediately call if symptoms persist over 24 hours to get an MRI the next day. | ECF 114-5 at 32:20-21 | N |
| 57. | 2021 0201 | Dr. Ayala testified "he was not in any program to prevent progression of MS" | ECF 114-5at 75:20-21 | N |
| 58. | 2021 0201 | Dr. Ayala testified that damage to brain by cocaine use often looks different on diagnostic imaging than lesions caused by MS | ECF 114-5 at 67:1-6 | N |
| 59. | 2021 0201 | Dr. Ayala testifies that treatment of the flare-ups with steroids was only the first step of treatment to be followed up with a neurology referral. | ECF 114-5 at 83:16-19 | N |
| 60. | 2021 0201 | Dr. Ayala stated that the jail providers' treatment of Brown with steroids indicated awareness that he suffered relapses. | ECF 114-5 at 75:23-76:1 | N |
| 61. | 2021 0201 | Deposition: Dr. Ayala states that he did not know when the relapse began but at least some effects occurred while he was in jail. | ECF 114-5 at 77:4-6 | Y |
| 62. | 2021 0201 | Deposition: Dr. Ayala stated that the 17-month interruption of treatment by Corizon more than likely further deteriorated Brown's condition | ECF 114-5 at 61:5-22 | Y |
| 63. | 2021 0201 | Dr. Ayala testified in deposition:<br><br>When you give [patients] steroids as the initial treatment or an acute relapse of multiple sclerosis, and the improvement is going to be surprisingly very positive. . . They can even recover almost completely to the point where physically you cannot tell. But it also tells you that the next time around, the recovery may not be as good. . . the more of that you have, the more likely is that with time you are going to be more likely to develop | ECF 114-5 at 16:9-22. | Y |

| | | deficits and probably permanent deficits. | | |
|---|---|---|---|---|
| 64. | 2021 0427 | Prednisone meds indicate Corizon medical staff were aware of Plaintiff's relapse. ARNP MacDonald said Plaintiff had trouble talking. | ECF 108 at 9, ¶ 31-32 | Y |
| 65. | 2021 0513 | Plaintiff suffered blurred vision, slurred speech, vomiting, as well as numbness in his left leg. | ECF 114-1 | N |
| 66. | 2021 0513 | Plaintiff had steady employment prior to arrest on July 27, 2015 | ECF 114-1 at 1 | Y |
| 67. | 2021 0513 | Plaintiff discovered he had a 2017 prescription for his medication, but it went to his wife's address and she never forwarded it to him | ECF 114-1 at 2 | N |
| 68. | 2021 1123 | The Court takes judicial notice of the costs of Plaintiff's Multiple Sclerosis medications as set out in a peer-reviewed journal article by Daniel M. Hartung. The annual costs of Copaxone and Gilenya in 2017 were $86,554.00 and $86,966.00, respectively. | ECF 112, 112-1, & 129-1. at 4. | N |

## D. Facts and Inferences that Could Warrant a Jury Finding of Liability[2]

The facts and the inferences that can reasonably be drawn from those facts would justify a reasonable jury in the conclusion that Plaintiff came to the Leon County Jail generally compliant with his medical regimen and employed. Corizon was aware on day one that he had Multiple Sclerosis and by day three they knew it was the relapsing remitting type. The Jail turned away his father who tried to bring him his medication and denied Plaintiff's requests for his medication. Records from TMH which became part of Plaintiff's file showed that he was taking Gilenya

---

[2] Plaintiff anticipates that Defendants will not dispute the facts that are documented here, mostly in their own records, except for the Plaintiff's Affidavit. Defendants will dispute that Plaintiff was substantially medication-compliant. They may dispute some of Dr. Ayala's opinions. Mostly they will dispute the inferences for deliberate indifference rather than independent medical judgment or negligence and the inference that the delay in the referral to Dr. Ayala was to save money or that Corizon had a corporate policy to deny or delay care to save money.

at a recent stay for surgery and that it was "medication to continue." Nevertheless there was no medication component of his treatment plan. Responses to his grievances were non-committal and seemed to promise action never delivered.

There was a six-month gap between his last grievance on August 27, 2015, and a Psychiatrist's Progress Note on March 1, 2016, in which there was no evidence of treatment. The psychiatrist noted "neurological symptoms." Plaintiff started having flare-ups in May 2016 which were treated with stop-gap steroid therapies. Plaintiff complained to his psychiatrist of inadequate treatment stating that he had numb left hand and face. "Wants other MS meds." Plaintiff's neurologist, Dr. Ricardo Ayala testified that steroids can bring good short-term results but without more, the next relapse will probably be worse and the deficits more likely permanent. In October of 2016, Plaintiff got an MRI that showed new MS damage. In November he complained of trouble getting into a top bunk.

Health Services Administrator (HSA) Sellers told Plaintiff's Public Defender that they are trying to get approval for the MS drug. Plaintiff finally got MS medication at the end of 2016, about 17 months after he entered the Leon County Jail. HSA Sellers testified under oath that she didn't know the cost of the MS medications prescribed by Dr. Ayala. But she (and Chief Health Officer Dr. Maria Garcia) signed a report showing that at over $5000 a month, Plaintiff's medication was over half of the whole jail's non-formulary medication cost.

Sellers' job description and employee evaluations show that she paid very close attention to financial matters and was praised for lowering costs in every sphere and encouraging her staff to do the same. A jury could draw the inference that she was very much aware of the cost and tried to avoid it.

Dr. Adamar Gonzalez was the Florida Director for the Corizon Jail Contracts and she testified under oath that Corizon provides care "within budget" at the contract sites. Dr. Carl Maier who was a Corizon employee and medical director of the Florida Department of Corrections Hospital in the Reception and Medical Center testified that Corizon ran into trouble in Florida and was losing $1 million a month. He said they just stopped sending people out for care. FDC Secretary Michael Crews complained in a September 26, 2014 letter that the care they were providing was unacceptable. Dr. Marc Stern, a Fed.R.Evid. 706 expert said that Corizon was a mature health care company whose problem was not a lack of knowledge but a lack of will.

In their depositions and responses to Requests for Admissions, Defendants Garcia, Sellers, and MacDonald showed that they were aware that Multiple Sclerosis was a serious medical condition that could have grave permanent effects. A jury could reasonably draw the inference that they delayed care for 17 months in order to save the approximately $120,000 that it would have cost to provide it.

Dr. Ricardo Ayala testified that treatment with steroids is just a short-term

fix that must be followed up with a referral to a neurologist. Dr. Ayala said that it was clear from the MRI in late 2016 that Plaintiff had suffered damage while in Jail. In response to claims that it could have been use of cocaine, Dr. Ayala said that kind of damage looks different. When the first flare-ups came in mid 2016 it was clear, if not before, that Plaintiff was relapsing. It still took another six months to provide the neurologist referral and start the process of getting Plaintiff on medications designed to treat relapsing MS.

In their contract, the Sheriff delegated to Corizon sole responsibility for making health care decisions. In so doing, he must share their liability.

## E. Conclusion

It is clear that there is liability for both the Sheriff and the medical defendants and that a jury could reasonably so find.

Respectfully Submitted,   *s/ James V. Cook*
JAMES V. COOK, ESQ., FBN 0966843
Attorney for Plaintiff
LAW OFFICE OF JAMES COOK
314 West Jefferson Street
Tallahassee, FL 32301
Tel. 850-222-8080; 850-561-0836 fax
cookjv@gmail.com

ATTORNEY FOR PLAINTIFF

I CERTIFY that the pertinent parts of this filing are not more than 4796 words.

I CERTIFY this filing was served by CM/ECF on counsel of record, *s/James Cook*