**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

BRYANT NEIL BROWN

Plaintiff,

v. Case No.: 4:19-cv-00345-MW-MAF

HON. WALTER McNEIL, as Sheriff of Leon County, Florida, and CORIZON LLC, a Health Services Corporation, and MARIA LILIANA GARCIA, MD, CELESTE MACDONALD, And DEBBIE SELLERS, individually,

Defendants.

______________________________________________/

**DEFENDANTS MARIA LILIANA GARCIA, MD, CELESTE MACDONALD, AND DEBBIE SELLERS, RENEWED MOTION FOR SUMMARY JUDGMENT[1]**

Defendants MARIA LILIANA GARCIA, MD ("Garcia"), CELESTE MACDONALD ("MacDonald"), and DEBBIE SELLERS ("Sellers"), pursuant to Federal Rule of Civil Procedure 56 and local rule 56.1, file their Renewed Motion for Summary Judgment as follows:

[1] This filing is hours late. Timely attempts hung the ECF system. After repeated attempts, the error was identified as a glitch in the Acrobat program affecting exhibits and the Motion. The undersigned promises AI was not involved and asks that filing be recognized as timely.

## I. Background

Brown entered the Leon County Detention Facility ("Jail") on July 27, 2015, and was discharged to a Florida prison on May 15, 2018. He was released from prison in January 2024, but returned in March 2026.[2] Garcia was the Jail physician; Macdonald a nurse practitioner and Sellers the health service administrator.

The only remaining claim is Count III, which is a deliberate indifference claim. The essence is the Defendants failed to treat multiple sclerosis ("MS") [ECF #3-8-10].[3]

## II. STATEMENT OF FACTS

When Brown entered the Jail, a medical history was taken and he disclosed a history of MS [ECF #202-1, 274]. It was determined that he was treated by Dr. Ayala at Tallahassee Neurological Clinic and those records were sought [ECF #202-1, 196]. Those records arrived in the Jail on July 29, 2015 and totaled 20 pages. The last visit with Dr Alaya in these records is dated July 11, 2012, fully three years earlier. At that time, Brown was part of a study related to the efficacy of a new MS medication, Gilenya, and the study was to "collect long term data." Dr. Alaya noted that Brown had been lost to the practice for "several months" [ECF #202-1, 132-33].

---

[2] https://pubapps.fdc.myflorida.com/offenderSearch/detail.aspx?Page=Detail&DCNumber=N32938&TypeSearch=AI

[3] References are "ECF #-pages."

According to these records, Brown was also considered to be part of an earlier study regarding this medication, which was done in 2008 and prior to FDA approval in 2010 [ECF #202-1, 144-148].[4]

Garcia first examined Brown on July 28, 2015. He did not complain of any MS symptoms and did not request medications [ECF #202-1, 206-207]. She again interacted with his treatment following a registered nurse's August 10, 2015 examination. During that examination, the nurse noted that he had no neurological deficits [ECF #202-1, 267-271]. Garcia determined that nothing needed to be done and testified that without a current prescription for MS medications, her practice then was "to evaluate the patient and, according to…to his condition, [she] want[ed] to decide what…to do with him" and she had experience treating MS [ECF #202-4, p. 19, l. 2-10].

On August 18, 2015, Brown submitted a Health Services Request Form asking about MS medications ECF #202-1, 222]. The response was by a non-defendant and stated the issue would be addressed to the physician. Nine days later, he submitted a grievance, identifying Dr. Ayala and Gilenya, but not suggesting he was having any symptoms. Sellers responded by noting that Brown had no current prescription from Dr. Alaya for Gilenya [ECF #202-1, 308].

[4] https://mymsaa.org/news/gilenya

May 8, 2016 marks the first time Brown complained of any MS symptoms [ECF #202-1, 219]. Before he could be scheduled to see Garcia, he overdosed on Risperdal and was seen by MacDonald for that condition on May 10, 2016 [ECF #202-1,72-73]. He saw MacDonald again on May 26, 2016 regarding a hand injury, and also mentioned some MS symptoms [ECF #202-1, 200]. She ordered an x-ray for the injury along with Solumedrol and prednisone for the MS symptoms [ECF #202-1, 259]. MacDonald testified that she could only prescribe medications that were stocked in the Jail. Other "non-formulary" medications had to be approved by a process begun by Garcia [ECF #202-3, p.26, l. 7-p. 28, l. 14].

On September 11, 2016, 4 months after he last complained of MS symptoms, Brown submitted a Health Services Request Form [ECF #202-1, 223]. MacDonald immediately ordered Solumedrol and had him moved to the infirmary [ECF #202-1, 84, 258]. The next day, Garcia examined him and ordered a brain MRI [ECF #201-1, 82, 258]. There was delay in having this order carried out, but Garcia reviewed the report on November 2, 2016 and referred Brown to Dr. Ayala [ECF 202-1, 199, 284].

Dr. Ayala saw Brown on December 13, 2016. He noted that he had not seen Brown in "many years," as treatment was discontinued in 2012 because "he did not come for follow up." He also stated, "just before that he had been discontinued from the clinical trial for Gilenya in [sic] the reason that he had been

experimenting with cocaine. . . ." [ECF #202-1, 189]. His medication suggestion was Copaxone, not Gilenya, as it was more compatible with Brown's other medications [ECF #202-5, 194; Alaya Depo, p. 19, l. 24- p.23, l. 16]. That medication was ordered by Garcia. [ECF #202-1, 60, 321-322].

## III. Argument

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In 1986, the Supreme Court decided a trio of cases which encourage the use of summary judgment as a means to dispose of cases which are not factually or legally supported. *See* *Celotex Corp.*, 477 U.S. at 317; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The primary purpose of granting summary judgment is to avoid unnecessary trials when there is no genuine issue of material fact in dispute, so if the evidence opposing summary judgment is merely colorable or is not significantly probative, summary judgment should be granted. *See* *Anderson*, 477 U.S. at 249-50.

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. Once the moving party identifies those portions of the record showing the absence of a genuine issue of material fact, the party opposing summary judgment must set forth specific facts showing a genuine issue for trial and may not rely on mere allegations or denials. *See Celotex Corp.*, 477 U.S. at 324; *Anderson*, 477 U.S. at 256-57. If the record as a whole could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue of fact precluding summary judgment. *See Matsushita*, 475 U.S. at 586.

Evidence that is "merely colorable, or is not significantly probative" of a disputed fact, or a "mere scintilla of evidence" is not sufficient; there must be enough of a showing that the (trier of fact) could reasonably find for that party. *Anderson*, 477 U.S. 242; *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1244 (11th Cir. 1999); *Walker v. Darby*, 911 F.2d 1573, 1576-77 (11th Cir. 1990). "Similarly, mere verification of a party's own conclusory allegations is not sufficient to oppose a motion for summary judgment." *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984).

### B. <u>Section 1983 and the 14th Amendment</u>

42 U.S.C. § 1983 was enacted as part of the Civil Rights Act of 1871 as the "Ku Klux Klan Act." The section provides a remedy for persons deprived of federal rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress.

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979). As such, it is a mechanism for bringing claims for federal constitutional or statutory violations. To prevail on a claim brought through section 1983, a plaintiff "must show violation of a constitutionally protected liberty or property interest and deliberate indifference to constitutional rights." *Rivas v. Freeman*, 940 F.2d 1491, 1496 (11th Cir. 1991); *West v. Atkins*, 487 U.S. 42, 48 (1988).

For individual defendants, a successful showing on this theory requires proof of deliberate indifference. The deliberate indifference showing requires proof the inmate suffered an objectively serious medical need, and the defendant

intentionally disregarded that need. *Farmer v. Brennan*, 511 U.S. 825, 833-38, (1994); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1191 n.28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than negligence and has adopted a "subjective recklessness" standard from criminal law).

The Supreme Court set the bar high for the objective component, observing "the Constitution does not mandate comfortable prisons." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (citation omitted), and if "prison conditions are merely 'restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* For claims alleging inadequate medical care, a plaintiff must demonstrate "an objectively serious medical need, one that, if left unattended, poses a substantial risk of serious harm." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (quotations omitted), and is either "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotation omitted). Second, the plaintiff must show the response "was poor enough to constitute an unnecessary and wanton infliction of pain." *Taylor*, 221 F.3d at 1258 (quotation omitted). The level of care exercised by the official must

be worse than mere "accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Id.* (quotations omitted).

Long ago, the Supreme Court determined the subjective component required pleading and proving a actual awareness of the risk of harm: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "There is no liability for 'an official's failure to alleviate a significant risk that he should have perceived but did not.'" *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (quoting *Farmer*, 511 U.S. at 838).

The Supreme Court has explained that "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106. "[A] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." *Id.* at 107. And "[a] mere disagreement between an inmate and the prison's medical staff as to the course of treatment does not establish deliberate indifference." *Black v. Ala. Dep't of Corr.*, 578 F. App'x 794, 796 (11th Cir. 2014) (citing *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991)).

Over decades, the subjective showing was eroded by loose language in decisions. Recently, the 11th Circuit made it plain:

> So, in sum, to the question we posed to the parties, "What is the standard for establishing liability on an Eighth Amendment deliberate-indifference claim?", we answer as follows:
>
> 1. First, of course, the plaintiff must demonstrate, as a threshold matter, that he suffered a deprivation that was, "objectively, 'sufficiently serious.'" (citation omitted).
>
> 2. Second, the plaintiff must demonstrate that the defendant acted with "subjective recklessness as used in the criminal law," and to do so he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff—with the caveat, again, that even if the defendant "actually knew of a substantial risk to inmate health or safety," he "cannot be found liable under the Cruel and Unusual Punishments Clause" if he "responded reasonably to the risk."

*Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (en banc)(citations omitted).

### C. The Defendants are entitled to summary judgment.

There are several terminal roadblocks to Brown's theory of the case. First, and glaringly obvious, there is no evidence any of the Defendants drew the conclusion that anything they did with Brown was likely to cause him unnecessary harm. On the contrary, he was treated for symptoms as they arose. Sellers was an administrator with no authority to treat patients. MacDonald encountered Brown once regarding MS. She provided medications and referred him to Garcia. Garcia successfully treated his symptoms twice. With the second, she referred him to Dr. Ayala, and his recommendation was followed.

Second, this case was always about prescribing Gileyna. Neither MacDonald nor Sellers could prescribe that medication. They clearly have no liability.

Third, Garcia had no reason to order the medication. While Brown was in the Jail, the only information was that he was involved in two prior studies involving Gileyna. He failed to comply with treatment during the first and was expelled from the second for using cocaine. There was no information that he was ever provided with the medication, as he could only obtain it through Dr. Alaya's studies, which he failed. Following his entry into the Jail, he had no symptoms for 10 months and was successfully treated for those symptoms. That breadth of time only underscores that a medication Brown was not taking was also not an immediate necessity. With a second relapse 4 months later, she sent him to Dr. Alaya and followed his course of treatment.

## IV. Conclusion

For these reasons, summary judgment must be entered for the Defendants.

## CERTIFICATE OF WORD LIMIT

Pursuant to Local Rule 7.1(F), this Motion contains 2577 words.

By: /s/ Gregg A. Toomey
Gregg A. Toomey
Florida Bar No. 159689

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 8, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF System, which will send a copy of the foregoing electronically to the following:

James V. Cook
James V. Cook PA
*Attorneys for Plaintiff*
314 W. Jefferson Street
Tallahassee, FL 32301-1608
P: 850-222-8080
F: 850-561-0836
E: cookjv@gmail.com

THE TOOMEY LAW FIRM LLC
*Attorneys for Defendants Corizon, Garcia, Sellers & MacDonald*
The Old Robb & Stucky Building
1625 Hendry Street, Suite 203
Fort Myers, FL 33901
Phone: 239.337.1630
Fax: 239-337.0307
Email: gat@thetoomeylawfirm.com, alr@thetoomeylawfirm.com

By: /s/ Gregg A. Toomey
Gregg A. Toomey
Florida Bar No. 159689